UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRANK URQUIDI, | ) No. CV 09-00139-VBK |
| | ) |
| Plaintiff, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| v. | ) |
| | ) (Social Security Case) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issue:

1. Whether the Administrative Law Judge ("ALJ") erred in

determining Plaintiff's credibility;

(JS at 3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed.

## DISCUSSION

### I

### THE ALJ ERRED IN DETERMINING PLAINTIFF'S CREDIBILITY

In his decision, the ALJ made the following pertinent findings concerning Plaintiff's credibility:

> "As introduced above, and even appreciating that [Plaintiff] has some problems with memory, [Plaintiff] was not fully candid about his employment history. This reflects adversely on his overall credibility. Regardless of whether the work qualifies as SGA [substantial gainful activity], in testifying, [Plaintiff] did not acknowledge working in 2006. More clearly, he minimized or overlooked significant post 1992 employment, including one year stocking/receiving for a dental supply company ending 1999. (Exhibit citation omitted.) Moreover, the SSA records reflect entries in excess of $3,000 for 1995, 1996 and for 1998, and a lesser amount for 1997; yet per [Plaintiff's] testimony, he did not work in any of these years. (Exhibit citation omitted.) Similarly, [Plaintiff's] presenting statements in April 2006 at a Kaiser Permanents Department

of Psychiatry that he had not worked since his son died were clearly inaccurate." (Exhibit citation omitted.)
(AR 14-15.)

Earlier in the decision, in analyzing whether, at Step One of the sequential evaluation process, Plaintiff has engaged in substantial gainful activity, the ALJ observed that,

"The analysis is made difficult by [Plaintiff's] contradictory statements. First, it is clear ... that [Plaintiff's] vocationally related testimony is inaccurate."
(AR 13.)

**A.   Evidence as to Plaintiff's Job History.**

At the hearing (AR 40-103), Plaintiff appeared, and was represented by counsel (the same counsel who presently represents him in this litigation). The ALJ's first questions concerned Plaintiff's educational history; he was unable to answer basic questions about how many grades he finished, where he went to school, and the like. (AR 47-48.) Then, the ALJ asked four questions at once:

"Did you learn how to do anything? Did anybody teach you how to do anything? Or did you just walk in and start doing the work and never get any instructions on anything? What job or jobs have you had since 1992?"
(AR 48.)

After answering the last question, concerning what jobs Plaintiff has had since 1992, the ALJ shifted the terrain and immediately asked about Plaintiff's most recent job. (Id.) Plaintiff answered that he

worked doing maintenance in a church. (AR 48-49.)  Plaintiff did not remember when he started, but knew it was about a month previous. (Id.)

What followed was a lengthy discussion about the exertional requirements of the maintenance job. (AR 49-50.)  Then, the ALJ returned to Plaintiff's work history, asking what job Plaintiff did before the maintenance work.  Plaintiff responded that he thought it was working as a kitchen worker in a school. (AR 50.)  The ALJ turned to a detailed discussion of the job requirements of that occupation (AR 51), before asking Plaintiff how long he worked at that job. (Id.) The ALJ prompted Plaintiff about the length of time at that work when Plaintiff responded "Not long," by asking the question, "Not long? Well, one minute, one year?" (AR 51.)  Plaintiff responded it was maybe a month, but that he didn't recall when he had that work. (AR 52.)  The ALJ posed detailed questions about his earnings from that work, whether it was part time or full time, and Plaintiff seemingly answered to the best of his ability. (AR 52.)

At that point, Plaintiff indicated he hadn't done any other kind of work in the past 15 years (AR 52), and the ALJ indicated that according to information he had, Plaintiff may have performed other jobs.  The ALJ offered to refresh Plaintiff's recollection. (AR 52.) For example, the ALJ indicated that there were records indicating that Plaintiff had worked one time as a truck driver and asked Plaintiff whether that reminded him, and Plaintiff indicated that he was a delivery man. (AR 53.)  Plaintiff's attorney stated that this was prior to 1992, with which Plaintiff agreed. (AR 53.)  Then, the ALJ asked about whether Plaintiff was a schoolyard superintendent, and Plaintiff responded that he used to work in a school "just keeping an

4

eye on the kids, ..." (AR 53.)  Plaintiff thought this was part time employment, but as to when, he asked the ALJ, "What year?  Can you tell me the year?" (AR 54.)  The ALJ evidenced some lack of specificity, indicating that, "I don't have a year down.  It's in the records --" (AR 54.)

At this point, Plaintiff's attorney attempted to assist, indicating that the job that had just been discussed occurred between June 1995 through 1997, referencing Exhibit "4E." (AR 54.)[1]

Plaintiff's attorney, in response to the ALJ's question, indicated that before the hearing she had reviewed "this material" (apparently referencing Plaintiff's job history) with her client, at which point the following interchange occurred between the ALJ and counsel:

"ALJ:     But there's a memory problem here ...
Atty:    He has a memory problem here.
ALJ:     ... which is becoming very obvious."
(AR 54.)

As Plaintiff's counsel aptly summarizes in the JS, on at least ten occasions during questioning by the ALJ as to specific details, such as dates of employment and earnings, Plaintiff indicated he did not know, did not remember, or could not recall. (See JS at 7.)  At the outset of the hearing, before the questioning began, Plaintiff had been assured by the ALJ that, "If you don't know the answer, then the

---

[1] From the context of this discussion, it would appear that counsel was referencing Exhibit 3E, entitled "Work History Report." In that document, under Section 2, entitled "Information About Your Work," Plaintiff stated, "Sorry, don't remember all the jobs or dates." (AR 118.)

best thing always is to say I don't know." (AR 45.) Plaintiff acknowledged that he understood this, and the ALJ continued by stating,

> "You can't get hurt if you say I don't know. But if you try to make something up or figure something out or if you guess and it's wrong, that will hurt. And the reason it will hurt is because part of this case is deciding how credible you are. That means whether you're telling the truth or not."

(Id.)

### B. Evidence as to Plaintiff's Mental Status and Memory Abilities.

The ALJ found that Plaintiff has severe impairments of depressive disorder NOS, learning disorder NOS, and borderline intellectual functioning. (AR 20.)

Supporting the ALJ's findings are both a psychological consultative evaluation ("CE") of September 27, 2006 by Dr. Kopoian (AR 178-184) and a psychiatric CE by Dr. Ritvo dated September 25, 2006 (AR 187-191). Dr. Kopoian's evaluation included test results on the Wechsler memory scale, which indicated that Plaintiff scored in the one percentile rank on auditory immediate memory; on the three percentile rank in visual immediate memory; on the 0.3 percentile rank in immediate memory; and in the one percentile rank in working memory. The classifications were "extremely low, borderline, extremely low, and extremely low," respectively. (AR 182.)

Dr. Kopoian also administered the Wechsler Adult Intelligence Scale, and Plaintiff scored a full scale IQ of 69 (second percentile),

a Picture IQ index score of 70 (second percentile) and verbal IQ index score of 72 (third percentile). (AR 181.)

At the hearing, Plaintiff testified that he had significant problems reading and writing, and that he depends on his wife for many of these functions. (AR 69.)

### C. **Analysis**.

The ALJ's credibility analysis must be supported by specific, clear and convincing reasons. See Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002); Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)(en banc). Credibility assessment factors are set forth in 20 C.F.R. §416.929 (2009); see also Social Security Ruling ("SSR") 96-7p.

In this case, the ALJ found that Plaintiff was not "fully candid about his employment history," and that this reflected adversely on his "overall credibility." (AR 14.) This conclusion, however, is not supported by substantial evidence. Initially, the ALJ's interpretation of the test scores as indicating that Plaintiff has "some problems with memory" vastly and seriously understates the fact that Plaintiff scored in the lowest percentiles in all memory categories. Moreover, while the ALJ assured Plaintiff at the outset of the hearing that his questions were not going to be a test, that Plaintiff should feel comfortable if he did not know the answer, and should say so, in fact, the examination appears to have been conducted not as a fact-finding process, but as a credibility test. And, with regard to Plaintiff's employment history, the questions were so staggered, compound, and often confusing, that even the Court had difficulty following exactly what the ALJ was trying to elicit. At

times, the ALJ was asking Plaintiff about his employment history, but interrupted this with detailed discussions about the exertional and non-exertional requirements of particular jobs. Moreover, there are other signs that Plaintiff was not prevaricating. His attorney stated that she had reviewed Plaintiff's employment history with him before the hearing. Considering the fact, therefore, that it would have been apparent to Plaintiff that his employment history was laid out in the records, why would he intentionally omit information during his testimony about this very subject? Beyond that, the context of the testimony indicates that Plaintiff appeared to be trying his best to provide relevant information. When the ALJ refreshed his memory about a particular job, Plaintiff was able to provide some information in response. Thus, the Court does not find that the credibility assessment is based on substantial evidence, but rather, on an inadequate understanding of the ramifications of both Plaintiff's intelligence and his memory test results.

In many situations, the Court would analyze credibility assessment factors in an independent fashion. That is, the issue would become whether the record supports an adverse credibility finding on enough valid factors, if invalid factors are discounted. But here, the ALJ's decision indicates that his interpretation of Plaintiff's testimony with regard to his employment history colored the entire credibility analysis. ("This reflects adversely on his overall credibility.")[2]  It is therefore impossible to parse the

---

[2]  In any event, the remaining credibility factors cited by the ALJ, which include supposed contradictions between the extent of his activities of living ("ADL") and his subjective pain complaints; the contrast between his pain complaints and his physical abilities as
(continued...)

credibility factors which the ALJ articulated.

For the foregoing reasons, this matter must be remanded for further hearing. Plaintiff's credibility must be evaluated <u>de novo</u>. The ALJ's extreme and negative conclusions concerning Plaintiff's credibility, moreover, lead the Court to conclude that this matter must be reassigned to a new ALJ on remand.

**IT IS SO ORDERED.**

DATED: February 10, 2010                              /s/
                                            VICTOR B. KENTON
                                            UNITED STATES MAGISTRATE JUDGE

---

[2](...continued)
manifested during medical examinations; and his conservative medications for this pain, seem inadequate as reasons to discount Plaintiff's overall credibility.

9